**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| APRIL WILLIAMS,<br>　　*Plaintiff*,<br><br>　　v.<br><br>FIRST TRANSIT, INC., et al.,<br>　　*Defendants*. | :<br>:<br>:　Civil No. 3:22-cv-90 (OAW)<br>:<br>:<br>:<br>:<br>: |

**RULING ON DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff, who is self-represented, initiated this action on January 18, 2022, asserting discrimination claims against First Transit, Inc.,[1] ("First Transit") under the Americans with Disabilities Act ("ADA"). ECF No. 1. She filed several more amended complaints (with the court's leave, as appropriate) and docketed the Third Amended Complaint ("TAC"), the operative pleading, on March 24, 2022. ECF No. 30. The TAC added several claims of violations of Title VII of the Civil rights Act of 1964[2] and the Connecticut Fair Employment Practices Act ("CFEPA"). It also named dozens of new defendants, most of them former coworkers. Each of the defendants who has appeared in this action[3] has filed a motion to dismiss (together, "Motions"). ECF Nos. 83, 88, 104, and 105. The court has reviewed all the Motions, all supporting exhibits and memoranda thereto, Plaintiff's oppositional filings, ECF Nos. 97 and 106,[4] and the record in this matter. For the following reasons, all of the Motions are **GRANTED**.

---

[1] Plaintiff apparently intended to sue her former employer, but, as will be discussed *infra*, First Transit was not her employer.
[2] Plaintiff also asserted claims under the Pregnancy Discrimination Act, but this act is a part of Title VII and merely specifies that discrimination on the basis of pregnancy is a form of sex discrimination. *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 125 (E.D.N.Y. 2011).
[3] The defendants who have appeared are Blendi Nako, Linda DeLallo, First Transit, and H.N.S. Management Co./CTtransit. H.N.S. Management is doing business as CTtransit, so although they are two named defendants, they are the same entity and shall be referred to as CTtransit in this ruling.
[4] Plaintiff filed her oppositions as motions, but the court construes them as response briefs.

1

I. **STANDARD OF REVIEW**

When reviewing a motion to dismiss, the court must accept as true the complaint's asserted facts and draw all reasonable inferences in the nonmovant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, to defeat a Rule 12(b)(1) motion, a plaintiff asserting proper jurisdiction must show that federal courts have "the statutory or constitutional power to adjudicate [the dispute]." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). And finally, "[o]n a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010).

II. **BACKGROUND**

It is difficult to follow the precise chronology of relevant events in the complaint, but it is clear that this case arises out of allegedly discriminatory behavior perpetrated against Plaintiff at CTtransit, Plaintiff's former employer.[5] Plaintiff worked for CTtransit as a bus operator from 2015 to 2019. ECF No. 30 at 2. During that time, Plaintiff alleges

---

[5] The complaint does not state the relationship between CTtransit and First Transit, Inc., but exhibits to the Motions indicate that although CT transit was Plaintiff's employer, First Transit, Inc., provides "limited management services" to CTtransit. ECF No. 88-2 at 5. It is not clear what these services comprise.

that she was subjected to harassment and retaliation for making complaints to authorities about discrimination happening within their organization.[6] *Id.* She alleges in general terms that her coworkers belittled her, treated her unkindly, and verbally abused her. *Id.* She also alleges that her supervisors treated her more harshly than her colleagues, particularly with respect to issuing discipline. *Id.* Aside from these general allegations, Plaintiff also accuses certain defendants of taking specific actions against her, including failing to provide a lactation room for nursing mothers, *id.* at 4; ignoring her physical and mental health needs, even when she was pregnant and experiencing Braxton-Hicks contractions (one individual allegedly even asserted that there is no such thing as Braxton-Hicks contractions), *id.* at 5; and telling her that she is unlikeable because she is a black woman with an authoritative personality, *id.* at 6. It is undisputed that Plaintiff was terminated in August 2019. *Id.* at 2.

Plaintiff asserts twelve counts in the complaint and names 31 defendants. Twenty-eight of these defendants are individuals who worked with her at CTtransit (collectively, the "Individual Defendants"). Three are First Transit, CTtransit, and H.N.S. Management, Inc. (collectively, the "Corporate Defendants"). The court construes the TAC to assert the following broad claims against all Defendants:

- Discrimination in violation of the ADA;[7]

- Retaliation and discrimination (on the basis of sex, race, color, age, ethnicity, national origin, pregnancy, and disability) in violation of Title VII;

---

[6] The specifics of these internal complaints are unknown.

[7] Formally speaking, the one ADA claim is stated against the Individual Defendants alone, but the court is obligated to construe a pro se litigant's complaint liberally. *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) ("The complaint of a pro se litigant is to be liberally construed in his favor."). Given that Plaintiff asserted ADA claims against the Corporate Defendants in her original complaint, and that some of the alleged offense conduct relevant to this claim was perpetrated by the Corporate Defendants, the court finds that it is appropriate to construe this claim against the Corporate Defendants as well.

3

and

- Discrimination (on the basis of sex, race, color, age, ethnicity, national origin, pregnancy, and disability), retaliation, and aiding in discriminatory practices, all in violation of the CFEPA.

### III. DISCUSSION

In the Motions, the appearing defendants assert that all these claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and under Rule 12(b)(6), for failure to state a cognizable claim. Defendants Nako and DeLallo also argue that the claims against them must be dismissed under Rule 12(b)(5), for improper service of process. The court shall begin with the service argument.

#### A. Service of Process

Plaintiff filed two proofs of service. ECF Nos. 95 and 99. The first appears to indicate that she personally served the summons on the defendants, and the second appears to indicate that she mailed a single envelope with all the summonses to a single address in Hartford (presumably the CTtransit office, though that is not clear).

Neither means of service is effective as to Defendants Nako and DeLallo. With respect to in-hand service, Rule 4 permits a summons to be served by any person over 18 years of age *who is not a party to the action*. Fed. R. Civ. P. 4(c)(2). Plaintiff therefore cannot effect service herself. And with respect to mailing the summonses, neither the Federal Rules nor Connecticut law provides for service by mail upon an individual who is a resident of Connecticut. Accordingly, the court lacks personal jurisdiction over Defendants Nako and DeLallo. Indeed, the court lacks personal jurisdiction over all the

Individual Defendants for the same reason. All the Individual Defendants therefore must be dismissed.

Failure to serve the defendants properly is reason enough to dismiss the claims as to the Individual Defendants. Deficiencies of process may be cured, though, and it is immediately apparent that there are other, more serious obstacles which cannot be overcome, and so the court will proceed to discuss these other shortcomings.

### B. Procedural Bars and Uncognizable Claims

In the first instance, there are no allegations in the complaint that can support claims of discrimination on the basis of age, ethnicity, or national origin, so the court dismisses all claims insofar as they are predicated upon such discrimination. Plaintiff's allegations can support only claims of discrimination based upon disability, sex, and race.

However, there can be no individual liability under the ADA or Title VII, so these claims must be dismissed, with prejudice, as to the Individual Defendants. *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir.2000) (per curiam) ("[I]ndividuals are not subject to liability under Title VII."); *Martin v. Town of Westport*, 329 F. Supp. 2d 318, 332 (D. Conn. 2004) (stating that the ADA "does not contemplate individual liability."). And the CFEPA only provides for individual liability against supervisors, and then only for retaliation and for aiding and abetting discriminatory behavior. *See Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 202 (D. Conn. 2000) (surveying relevant Connecticut case law and noting that individual supervisors may be held individually liable only for retaliating against anyone who has opposed discriminatory practices or for aiding or inciting discriminatory practices); *see also* Conn. Gen. Stat. § 46a–60(a)(1), (4)–(5). Thus, the CFEPA discrimination claim must be dismissed, with prejudice, as to each Individual Defendant,

and the retaliation and aiding-and-abetting CFEPA claims must be dismissed, with prejudice, as to each of the Individual Defendants except those who plausibly can be found to be supervisors.[8]

After these initial insurmountable pleading hurdles, the only claims that remain are those for discrimination on the basis of race and sex against any Individual Defendant who was a supervisor (under the CFEPA) and against the Corporate Defendants (under Title VII, and the CFEPA); and discrimination on the basis of disability under the ADA against the Corporate Defendants.

However, Plaintiff did not exhaust her remedies with respect to any claim of racial harassment. Both federal and Connecticut law requires that an individual claiming employment discrimination first must present their claim to an administrative body (the federal Equal Employment Opportunity Commission, or "EEOC," or the Connecticut Commission on Human Rights and Opportunities, or "CHRO"). 42 U.S.C.A. § 2000e-5(b); Conn. Gen. Stat. § 46a-82. Only after the administrative body has had an opportunity to attempt to resolve the grievance may the individual bring the claim to court. 42 U.S.C.A. § 2000e-5(f); Conn. Gen. Stat. § 46a-100. Under Title VII, the exhaustion requirement is not jurisdictional, and so it may be waived or estopped where appropriate. *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999) ("The Supreme Court has stated that 'filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'") (quoting

---

[8] Because, as will be explained, all the CFEPA claims also must be dismissed for lack of subject matter jurisdiction, the court need not make any determination as to which of the Individual Defendants may be deemed a supervisor based on the facts alleged.

*Zipes v. Trans World Airlines*, Inc., 455 U.S. 385, 393 (1982)).  But exhaustion may not be waived under the CFEPA, and without a release of jurisdiction, this court is without subject matter jurisdiction over Plaintiff's CFEPA claims.[9]  *See Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 272 (D. Conn. 2010) ("The courts of this District have consistently applied the exhaustion provisions of the CFEPA to dismiss discrimination claims, finding a lack of subject matter jurisdiction where the plaintiff failed to obtain the requisite release prior to pursuing a private cause of action in court.").

Plaintiff did file two grievances with the CHRO, which were filed dually with the EEOC, but neither of the grievances stated that she had been discriminated against for her race or color.[10]  ECF Nos. 104-6 and 104-7.  Accordingly, the racial discrimination claims, under both the CFEPA and Title VII, must be dismissed with prejudice.  However, the court finds that the second grievance Plaintiff submitted, in which she stated that her disability was "pregnancy-related," serves to allege sex discrimination for the purpose of exhausting a Title VII claim.  Although she did not check the box next to the "Title VII" option in that grievance, the court finds that the Title VII claim is reasonably related to the CFEPA claims that Plaintiff did indicate in that form (and arises out of the same alleged conduct), which satisfies the exhaustion requirement for Title VII.  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 614 (2d Cir. 1999) ("[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency.").  Furthermore, Plaintiff

---

[9] Given this clear jurisdictional bar, the court need not address the argument that Plaintiff's only recourse under the CFEPA was to appeal the dismissal of her complaint to the Superior Court.

[10] The court notes that the time in which she might have filed suit pursuant to the first grievance expired long before Plaintiff initiated this action.  Under Conn. Gen. Stat. § 46a-102, Plaintiff had two years from February 2018, when she filed the grievance with the CHRO, to bring a civil action against her former employer.  However, because this statute of limitations prevents no claims from being heard that are not also dismissed for other reasons, the court need not discuss this bar any further.

7

clearly was permitted by the EEOC to sue, and thus there is no jurisdictional bar preventing this court from considering these federal claims.

Hence, the only claims that are cognizable are the following claims against the Corporate Defendants: (1) discrimination in violation of Title VII (on the basis of sex/pregnancy) and (2) discrimination in violation of the ADA.  The Corporate Defendants argue, however, that Plaintiff still fails to state her claims.

### C. Failure to State a Claim

Construing the complaint liberally in Plaintiff's favor, the court concludes that the allegations therein best align with claims of a hostile work environment under Title VII and a failure to accommodate under the ADA.[11]  But even viewing the allegations in the TAC in a light most favorable to Plaintiff, the court cannot find the elements of either claim satisfied therein.

In the first instance, the court agrees with First Transit that any claims against it must be dismissed because there are insufficient allegations in the complaint to show that it could be held liable as an employer.  Specifically, the only reference to First Transit is an accusation that it failed to provide a lactation room and that it did not follow up with Plaintiff regarding certain internal complaints she submitted to them.  But it is undisputed that Plaintiff was employed by CTtransit, not First Transit.  And while some legislation allows for a joint employment arrangement whereby two entities share employer obligations to an employee, such an arrangement cannot be found within the factual

---

[11] The Corporate Defendants made arguments with respect to some common-law torts, in the event the court construed the complaint to assert those claims, but the court concludes that, even interpreting the complaint liberally, the allegations do not support these tort claims, and Plaintiff appears to reference tort language only in relation to stating her civil rights claims.  Thus, the court concludes that the complaint sounds in federal civil rights laws alone, and not in common law.

8

allegations presented here. *See Vitti v. Macy's Inc.*, 758 F. App'x 153, 156 (2d Cir. 2018) (discussing joint employment in the ADA context). It is not clear what services First Transit provides to CTtransit, or whether those services are broad enough to impose liability upon First Transit. Plaintiff has not described her relationship to First Transit clearly enough even to infer the scope of services provided by that entity. Accordingly, the Title VII and ADA claims against First Transit must be dismissed.

CTtransit footnotes in its motion that even if the court (as it does here) were to liberally construe the complaint so as to find that Plaintiff did not abandon the ADA claim against it, Plaintiff still has failed to allege even the basic elements of her claim. The only arguments related to the Title VII claims that CTtransit asserts are based on exhaustion, which the court has addressed (and rejected in relevant part) *supra*. But the court will apply to the Title VII claim those arguments related to the ADA claim, given that the predicate condition (Plaintiff's pregnancy) is the same for both.

"To plead a failure-to-accommodate claim, a plaintiff must allege that '(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 18 (2d Cir. 2015) (quoting *McMillan v. City of N.Y.*, 711 F.3d 120, 125–26 (2d Cir.2013)) (alteration in original). "To establish a hostile work environment under Title VII, § 1981, or § 1983, a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"

*Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The court cannot find that the TAC adequately alleges all the elements of either an ADA failure to accommodate claim or a Title VII hostile work environment claim.  First, it is generally recognized in this circuit that pregnancy alone does not constitute a disability within the meaning of the ADA.  *See, e.g. Reynolds v. Town of Suffield,* No. 3:10CV1528 JBA, 2012 WL 3135896, at *6 (D. Conn. July 31, 2012) ("[I]t is well settled that pregnancy is not a disability *per se* under the ADA.").  While it may be possible for conditions related to pregnancy to rise to the level of a disability within the meaning of the ADA, Plaintiff does not clearly allege: the complications she experienced while working for CTtransit; when she experienced them; or how CTtransit failed to accommodate her needs.  Furthermore, it is unclear whether Plaintiff requested any reasonable accommodations for her pregnancy, or if those requests were denied.  Without a clear chronology of events, the court cannot discern an ADA claim.

And with respect to the Title VII claim, the court cannot find that the pattern of rude behavior Plaintiff describes clearly stems from discriminatory animus against her on the basis of her pregnancy, or that it was severe or pervasive enough to have altered the terms of her employment with CTtransit.  The majority of the factual allegations assert that Plaintiff was spoken to rudely, but this sort of conduct generally does not give rise to an actionable discrimination claim.  And while it does appear that Plaintiff's appearance was the object of repeated attention at CTtransit (she alleges that she was told to "cover up" with large shirts and sweaters, and that she was reprimanded for being out of dress code), it is not clear that it was the appearance of pregnancy that caused that attention,

and even if it was, it is not clear that this conduct rises to the level of discrimination, either. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (noting that merely offensive utterances are not actionable under Title VII). Accordingly, Plaintiff's Title VII claim also must be dismissed as to CTtransit.

Finally, the court notes that the TAC is Plaintiff's seventh[12] attempt to properly plead her claims under the Federal Rules of Civil Procedure. Given this fact, the court finds that no further opportunity to amend is warranted. *See Khalil v. Pratt Inst.,* 818 F. App'x 115, 117 (2d Cir. 2020) ("[T]he district court's dismissal of the third amended complaint with prejudice was proper because it had previously granted Khalil several opportunities to amend.").

## IV. **CONCLUSION**

Accordingly, it hereby is **ORDERED AND ADJUDGED** as follows:

1. The motions to dismiss filed by CTtransit, First Transit, Inc., Blendi Nako, and Linda Delallo, ECF Nos. 83, 88, 103, and 105, are **GRANTED.** All claims against all defendants are dismissed with prejudice.

2. The court respectfully asks the Clerk of Court to terminate Plaintiff's rebuttal motion, ECF No. 97, and Plaintiff's Motion Not to Dismiss, ECF No. 106, and to please close this case.

**IT IS SO ORDERED** this 8th day of November, 2023, at Hartford, Connecticut.

                                                                                                                /s/_____
                                                            Omar A. Williams
                                                            United States District Judge

---

[12] Although the TAC would generally be the fourth pleading from a plaintiff in an action, there were several interim pleadings that were not properly titled in this case.

11